UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:06CV-00197-JHM

NATHANIEL WOOD                                                    PETITIONER

VS.

BECKY PANCAKE, Warden                                            RESPONDENT

FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION

BACKGROUND

Petitioner, *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 (DN 1).  The petition identifies nine grounds for relief (DN 1).  The district court referred

this matter to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A)

and (B) (DN 5).

Respondent has filed a Rule 5 answer as well as a motion to dismiss and,

alternatively, a motion for summary judgment (DN 10, 11).  Petitioner has filed a response to the

dispositive motion (DN 12).  The undersigned concludes the record is adequately developed to

address the issues raised herein and, thus, an evidentiary hearing is not necessary.  The issues raised

by petitioner are fully developed and this matter is ripe for determination.

FINDINGS OF FACT

Following a jury trial before the Barren Circuit Court Petitioner, Nathaniel Wood

("Wood"), was convicted of capital murder, capital kidnaping, kidnaping, first degree criminal

trespass, second degree assault, and violation of a protective order.  Wood v. Commonwealth of

Kentucky, 178 S.W.3d 500, 505 (Ky. 2005).  During the penalty phase of the trial jurists found the

presence of two aggravating circumstances with respect to both the murder and the capital kidnaping charges.  Id. at 506.  Specifically, jurors found that "'Wood has a substantial history of serious assaultive criminal convictions'...[and]...'Wood murdered Anna Jones when an Emergency Protective Order or any other order designed to protect Anna Jones from Wood, such as an order issued as a condition on a bond, was in effect.'"  Id.  Jurors also found the presence of an additional aggravating circumstance with respect to only the capital kidnaping charge.  Id.  Specifically, they found "'[i]n the course of the commission of the kidnaping, Wood murdered Anna Jones.'"  Id. Jurors recommended a sentence of life without the benefit of probation or parole for both the capital kidnaping and murder counts.  Id.  The trial court adopted these aggravated sentences recommended by the jury.  Id.  Wood received a sentence of life without the benefit of parole for the capital murder and capital kidnaping convictions, he received twenty years for the kidnaping conviction, he received twelve months for the trespassing conviction, he received five years for the assault conviction, and he received twelve months for violation of the protective order.  Id. at 506.  As a matter of right Wood appealed to the Supreme Court of Kentucky.  Id.  He raised nine issues on direct appeal.  Id.

By way of background, Wood assaulted his ex-girlfriend, Anna Jones ("Jones"), in her house on December 29, 2000.  Id.  An examination at the local hospital revealed that Jones suffered bruising to her ribs and a cut lip.  Id.

Later that day Jones petitioned the Barren District Court for an emergency protective order ("EPO").  Id.  The Barren District Court issued the order and scheduled an EPO hearing for January 8, 2001.

Additionally, on December 29, 2000, criminal charges were brought against Wood based on the assault at Jones' home.  Id.  The criminal charges included assault in the fourth degree.

2

Id.  Wood was arrested and released on bond on December 29.  Id.  As a condition of his bond, Wood was ordered to have no contact with Jones and to refrain from any communication with her, either directly or indirectly.  Id.

On January 3, 2001, Wood encountered Jones as she was driving on Broadway Street in Glasgow, Kentucky.  Id.  Fred Tisdale ("Tisdale"), a friend of Jones, was a passenger in her vehicle.  Id.  Wood cut in front of Jones' vehicle at an approximate forty-five degree angle to block her path.  Id.  Wood then exited his vehicle and started to yell and wave a handgun as he approached Jones' vehicle.  Id.  He then fired the handgun through the driver's side window striking Jones who went silent.  Id.  Mr. Tisdale was trapped in Jones' vehicle because the passenger door was jammed.  Id.  He used the butt of his own gun to escape out of a side window.  Id.  When Tisdale escaped from Jones' vehicle, he found Wood crouched by the driver's side rear door with his gun drawn.  Id.  A struggle ensued, during which Tisdale was shot in the forearm as Wood attempted to pull Jones from the vehicle.  Id.  Additionally, during this struggle Wood was shot once in the leg and twice in the abdomen.  Id.

Believing Jones to be dead and fearing for his own life, Tisdale then fled to a nearby office to call for help.  Meanwhile, Wood removed Jones from the driver's seat of her vehicle and loaded most of her into the back seat of his own vehicle.  Id.  Wood then drove away with Jones' legs hanging out of the back driver's side door with her feet dragging on the ground.

Responding to several 911 calls from numerous bystanders who witnessed this scene, law enforcement vehicles began pursuing Wood.  Id.  Wood pulled into the yard of Ms. Burldean Summers and ran into her home.  Id.  He abandoned Jones' limp body in his vehicle with her legs and feet hanging out of the back door.  Id.  Initially Ms. Summers thought Wood had been in some kind of accident because he was bleeding.  Id.  She showed him to the bathroom.  Id.  When the

3

police arrived, Wood grabbed Ms. Summers as a hostage and fled to a spare bedroom in the house. Id.

Wood and Ms. Summers remained barricaded in the home until police negotiated her release three hours later. Id. The standoff with Wood continued through the night and into the next day. Id. Finally, police began pumping gas into Summers' home to force Wood's exit. Id. Twenty-four hours after Wood arrived at Summers' house, police entered the house, physically removed Wood, and then arrested him. Id.

On direct appeal Wood alleged nine trial errors. Id. at 506. The Supreme Court of Kentucky addressed the merits of four of Wood's five claims that focused on the aggravating circumstances jurors considered during the penalty phase. Id. at 506-513. It declined to address the merits of his challenge to the aggravating circumstances in KRS 532.025(2)(a)(1) and KRS 532.025(2)(a)(8) because it was not preserved for appellate review and he failed to satisfy the standard under Ky.R.Crim.P. 10.26. Id. at 511. The Supreme Court of Kentucky also addressed the merits of his challenges to the trial court's adverse rulings on change of venue, separate trials, the kidnaping exemption, and exclusion of five prospective jurors for cause. Id. at 513-517. In sum, the Supreme Court of Kentucky affirmed the judgment of the Barren Circuit Court. Id. at 517.

Wood then filed the within petition which sets forth nine grounds for relief (DN 1). The first five grounds for relief focus on the aggravating circumstances considered by jurors during the penalty phase (DN 1). The remaining four grounds for relief concern the adverse rulings by the trial court on change of venue, separate trials, the kidnaping exemption, and exclusion of five prospective jurors for cause (DN 1).

CONCLUSIONS OF LAW

4

Since Wood filed his petition for writ of habeas corpus on November 8, 2006 (DN 1) review of the State court decisions is governed by Chapter 153 of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214 (1996) ("AEDPA").  Lindh v. Murphy, 521 U.S. 320, 336 (1997).  As to each claim made by Wood, the Court must determine first whether a constitutional right has been violated.  Williams v. Taylor, 529 U.S. 362, 367 (2000).  If the answer is in the affirmative and the State court adjudicated the claim on its merits, this Court must then employ the standard of review set forth in 28 U.S.C. § 2254(d) to determine whether to grant the petition.  Williams, 529 U.S. at 367, 402-403, 412-413.  As amended, by Chapter 153 of AEDPA, § 2254(d) provides as follows:

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) Resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding."

Under the "contrary to" clause of § 2254(d)(1), the Court may grant the petition if "the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] ... on a question of law or if the state court decides a case differently than ...[the Supreme Court] ... has on a set of materially indistinguishable facts."  Williams, 529 U.S. at 412-413.  Under the "unreasonable application" clause of § 2254(d)(1), the Court may grant the petition if  "the state court identifies the correct governing principle from ... [the Supreme Court's] ... decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  To meet this standard the State court's application of clearly established federal law must be more than incorrect,

5

it must be objectively unreasonable. Id. at 409-411. To meet the "unreasonable determination of facts" standard in § 2254(d)(2) the undersigned opines the State court's determination of facts must be more than incorrect, it must be objectively unreasonable. In sum, § 2254(d), as amended by Chapter 153 of AEDPA, places constraints on the power of the Court to grant a petition as to constitutional claims adjudicated on the merits in the State courts. Williams, 529 U.S. at 412.

A

In Ground One, Wood essentially argues the aggravated sentence for capital kidnaping cannot stand because there was insufficient evidence to support the jury's finding that he murdered Jones during the course of the kidnaping (DN 1). He argues Jones did not die as a result of injuries she received during the kidnaping (DN 1). Wood asserts he was denied "the right to prove beyond a reasonable doubt, a fair trial & reliable sentencing" (DN 1).

On direct appeal Wood argued this error violated his rights to proof beyond a reasonable doubt, a fair trial and reliable sentencing under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution (DN 11, Appendix at 157). Thus, he provided the Commonwealth with the "opportunity to pass upon and correct" the alleged violations of his federal Constitutional rights.[1] Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotations omitted) (citations omitted); Teague v. Lane, 489 U.S. 288, 297-299 (1989); Anderson v. Harless, 459 U.S.

_____

[1]To provide the State with this necessary "opportunity," the prisoner must "fairly present" his federal rights claims "in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature" of each claim. Baldwin v. Reese, 541 U.S. 27, 29 (2004). A federal rights claim is "fairly presented" to each State court if the petitioner's State-court motion, petition, memorandum or brief cites in conjunction with the claim (1) the federal source of law upon which he relies; (2) a federal or State case deciding such a claim on federal grounds; or (3) by simply labeling the claim "federal." Id.

6

4, 6 (1982) (per curiam).  For this reason, there is no merit to respondent's argument that federal review is barred due to a failure to present this Constitutional claim to the State courts.

On direct appeal Wood  primarily argued there was insufficient evidence to support the jury's finding that he murdered Jones during the course of the kidnaping.  Wood, 178 S.W.3d at 506.  He asserted that the evidence demonstrated Jones died before he removed her from the vehicle, the point when the kidnaping commenced according to the guilt phase instructions.  Id. at 506-507.

The Supreme Court of Kentucky concluded while Wood's argument is a defense to the underlying charge of kidnaping it is not applicable to the question of the validity of the aggravating circumstance.  Id. at 507.  It the commented "[b]y finding Wood guilty of kidnaping Ms. Jones, the jury implicitly determined beyond a reasonable doubt that she was alive at the time he took her from her vehicle because one can kidnap only a living person."  Id. (citing Ernst v. Commonwealth, 160 S.W.3d 744, 767 (Ky. 2005)).  The Supreme Court of Kentucky then indicated as follows:

> "Though we need not address the sufficiency of the evidence that Ms. Jones was alive when she was taken to Wood's car, as Wood has not challenged the underlying capital kidnaping charge, suffice it to say that Dr. Corey's testimony that Ms. Jones would not have died instantly provided enough evidence upon which the jury could base its conclusion."

Wood, 178 S.W.3d at 507.

Next, the Supreme Court of Kentucky addressed Wood's alternative argument that even if Jones did die while in his vehicle, she received the fatal injury prior to the kidnaping and thus, she was not murdered during the kidnaping.  Id.  Wood asserted such a finding would not support the jury's determination that he murdered Jones during the course of the kidnaping for purposes of the aggravated sentence.  Id.  The Supreme Court of Kentucky applied Kentucky law

to the evidence in the record and concluded, since Jones died while in Wood's vehicle, as a result of a wound he inflicted before the kidnaping commenced, Jones was murdered during the course of the kidnaping.  Id.

Since the Supreme Court of Kentucky addressed Wood's claim both on the merits and alternatively on the procedural ground, the procedural default will be deemed invoked and federal review on the merits will hinge on a showing of "cause" and "prejudice".  Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989).  Since Wood has failed to show "cause" and "prejudice" to excuse his procedural default (DN 12), federal review of this claim is barred.  Reed v. Farley, 512 U.S. 339, 353-355 (1994); Teague v. Lane, 489 U.S. 288, 297-299 (1989).

Notwithstanding, the Supreme Court of Kentucky did not address the Constitutional component to Wood's claim because it disposed of the claim on a State law basis.  Id. at 506-507. For this reason, Wood's Constitutional claim is examined *de novo* instead of performing a § 2254(d) review.  Rompilla v. Beard, 545 U.S. 374, 390 (2005) (citing Wiggins v. Smith, 539 U.S. 510, 534 (2003)).

Sufficient evidence supports a jury's finding if, after viewing the evidence (and the inferences to be drawn therefrom) in the light most favorable to the prosecution, the Court can conclude that any rational trier of fact could have found the essential elements beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 324 (1979).  Additionally, under Kentucky law the offense of murder is not complete until the victim has died.  Ernst v. Commonwealth, 160 S.W.3d 744, 767 (Ky. 2005) (citations omitted).  In recognition of this, Kentucky law holds if a defendant inflicts an injury prior to commencement of the kidnaping and the victim dies from that injury at some point during the course of the kidnaping then the aggravating factor--murder of the victim during the course of the kidnaping--applies.  Id. at 766-767.  These holdings with respect to

8

Kentucky law are binding on this Court. <u>Wainwright v. Goode</u>, 464 U.S. 78, 84 (1983) (per curiam).

      Here, the evidence clearly indicates that Wood inflicted the fatal wound before the kidnaping commenced. When Dr. Corey's testimony (and the inferences to be drawn therefrom) is viewed in a light most favorable to the prosecution, it provides sufficient evidence to conclude that any rational trier of fact could have found beyond a reasonable doubt that Jones died from that wound after the kidnaping had commenced. <u>Id.</u> Additionally, the jury apparently heard eye witness testimony indicating Wood struggled with Jones as he pulled her from her vehicle (DN 11, Appendix at 42-43, 47-48). Such testimony would only reinforce the undersigned's conclusion that sufficient evidence supports the jury's finding that Wood murdered Jones during the course of the kidnaping. Thus, there is no merit to Wood's claim in Ground One.

      In sum, the undersigned concludes this habeas claim should be denied on a procedural ground, but if the claim is considered on the merits, Wood has failed to state a valid claim of the denial of a Constitutional right. A two-prong test is used to determine whether a Certificate of Appealability should issue on a habeas claim denied on a procedural ground. <u>Slack v. McDaniel</u>, 529 U.S. 473, 485-485 (2000). To satisfy the first prong, Wood must demonstrate "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a Constitutional right." <u>Id.</u> at 484. To satisfy the second prong, Wood must show "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Notably, the Court need not conduct this two-pronged inquiry in the order identified or even address both parts if Wood makes an insufficient showing on one part. <u>Id.</u> at 485. Here, for the reasons set forth above, the undersigned concludes a plain procedural bar is present and jurists of reason would not find it debatable whether federal review is barred. <u>Id.</u> at 484. Additionally, for the reasons set forth

above, the undersigned is confident that jurists of reason would not find it debatable whether Ground One states a valid claim of the denial of a Constitutional right.  Thus, the undersigned does not recommend issuance of a Certificate of Appealability as to the claim asserted in Ground One (DN 1).

B

In Ground Two Wood challenges the availability of the EPO/bond condition as aggravating factors to the capital kidnaping charge (DN 1).[2]  On direct appeal Wood admitted the issue was not preserved for appellate review but requested review and relief under Ky.R.Crim.P. 10.26.  Wood, 178 S.W.3d at 511.  The Supreme Court of Kentucky declined to address the merits of his claim because it was not preserved for appellate review and the standard under Ky.R.Crim.P. 10.26 could not be satisfied.[3]  Id.

Since Wood failed to comply with the State procedural rule and that failure provided an adequate and independent ground for the State's denial of relief, federal review of this claim is barred absent a showing of "cause" and "prejudice".  Harris v. Reed, 489 U.S. 255, 262-264 (1989); Murray v. Carrier, 477 U.S. 478 (1986).  Notably, Wood has made no attempt to make such a showing (DN 1, 12).  Therefore, federal review of the claim in Ground Two is barred.

A two-prong test is used to determine whether a Certificate of Appealability should

---

[2]Notably, on direct appeal Wood also challenged the availability of the aggravating factor in KRS 532.025(2)(a)(1) for the offense of capital kidnaping (DN 11, Appendix at 157-160). Apparently Wood has elected not to raise this claim in his habeas petition.

[3]The Supreme Court of Kentucky held the alleged error was harmless because the jury found beyond a reasonable doubt that Wood murdered Jones during the course of the kidnaping and this aggravating circumstance was enough to impose the aggravated sentence under KRS 532.025(3).

10

issue on a habeas claim denied on a procedural ground.  Slack v. McDaniel, 529 U.S. 473, 485-485 (2000).  To satisfy the first prong, Wood must demonstrate "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a Constitutional right."  Id. at 484.  To satisfy the second prong, Wood must show "jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.  Notably, the Court need not conduct this two-pronged inquiry in the order identified or even address both parts if Wood makes an insufficient showing on one part.  Id. at 485.  Here, for the reasons set forth above, the undersigned concludes a plain procedural bar is present and jurists of reason would not find it debatable whether federal review is barred.  Id. at 484.  Thus, the undersigned does not recommend issuance of a Certificate of Appealability as to the claim set forth in Ground Two.


C

In Ground Three Wood challenges the trial court's adverse ruling on his motion to exclude application of the EPO/bond condition aggravator, set forth in KRS 532.025(2)(a)(8), to both the capital kidnaping and murder charges (DN 1).  On direct appeal he alleged the trial court's ruling resulted in a violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution (DN 11, Appendix at 164).  Thus, Wood did provide the Commonwealth with the "opportunity to pass upon and correct" the alleged violation of his federal Constitutional right.  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotations omitted) (citations omitted).  For this reason, there is no merit to respondent's contention that review of the claim is barred due to a failure to fairly present his federal rights claim to the State courts.

The Supreme Court of Kentucky noted that the jury applied the EPO/bond condition aggravator, set forth in KRS 532.025(2)(a)(8), to both the capital kidnaping and the murder charge.

Wood, 178 S.W.3d at 511-512.  It noted that Wood argued the EPO was invalid as Jones lacked standing to seek the EPO against him because he is "not a 'family member' or 'member of an unmarried couple' as set forth in KRS 403.725." Id. at 512.  Wood also asserted that "use of an EPO as an aggravator generally violates principles of due process because such orders are granted ex parte upon a petitioner's request." Id.  The Supreme Court of Kentucky noted that Wood challenged the validity of the bond condition by arguing if the EPO was invalid because it was issued ex parte, then the arrest and resulting bond condition, which is based on the same set of events, is also invalid. Id.  Alternatively, Wood argued since the criminal complaint for the charge was not filed until after Jones' death, the bond condition order resulting from the arrest was not effective until the filing date. Id.

The Supreme Court of Kentucky found Wood's first argument as to the bond condition to be with out merit because a bond condition, unlike an EPO, follows an arrest that is based upon probable cause. Id.  It found no merit to Wood's second argument because "Wood signed the conditional release order on December 29 and was on actual notice of this single condition of his release at the time." Id.  The Supreme Court of Kentucky observed, "[i]t would defy common sense and undermine the purpose of a conditional release if those very conditions became effective at the time of filing rather than the time of release." Id.  It concluded since Wood violated a condition of his bond in murdering Jones, any alleged error with respect to the EPO is harmless. Id.

The Supreme Court of Kentucky then addressed Wood's arguments as to the EPO. Id. at 512-513.  It reasoned although issued *ex parte*, an EPO is a "valid court order and must be obeyed until such time that the Court can hear the adverse party, if that party so desires." Id. at 513. The Supreme Court of Kentucky observed "KRS 403.745(4) requires that a hearing be held within

fourteen days, at which the adverse party may directly challenge the order and argue against imposition of a more permanent domestic violence order." It concluded "adverse parties to an EPO are not denied due process of law because they have available to them a route by which to directly challenge the order." Id. The State appellate court also pointed out in Gutierrez v. Commonwealth, 163 S.W.3d 439 (Ky. 2005), it held "an appellant may not launch a collateral attack on the validity of an emergency protective order in a subsequent prosecution for violation of that order." Wood, 178 S.W.3d at 513.

The Supreme Court of Kentucky determined that Wood's due process claim was baseless because he had ample means to challenge the EPO. Id. In reaching this conclusion it noted "a hearing on the EPO was scheduled in accordance with KRS 403.740(4) at which he could have stated his position, and he was served with the EPO which contained the date of the scheduled hearing." Id. The Supreme Court of Kentucky concluded if Wood was denied the opportunity to challenge the EPO before the issuing court, it was the result of his choice to murder Jones prior to the hearing. Id.

Wood's claim of a violation of his due process right under the Fourteenth Amendment is specious at best. Since Wood has failed to demonstrate a violation of his due process right under the Fourteenth Amendment, it is not necessary to perform a § 2254(d) review. Notwithstanding, adjudication of this claim by the Supreme Court of Kentucky has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of," clearly established federal law, as determined by the Supreme Court of the United States. Williams v. Taylor, 529 U.S. 362, 412-413 (quoting § 2254(d)(1)). In sum, Wood is not entitled to a writ on the claim set forth in Ground Three of his petition.

For the reasons set forth above, the undersigned is confident that jurists of reason

would not find it debatable whether Ground Three states a valid claim of the denial of a Constitutional right. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). Therefore, the undersigned does not recommend issuance of a Certificate of Appealability as to the claim asserted in Ground Two.


### D

In Ground Four Wood argues the "substantial history of serious assaultive convictions" aggravator in KRS 532.025(2)(a)(1) is unconstitutionally vague (DN 1). He alternatively argues the trial court should have determined which of his prior convictions should be presented to the jury for consideration (DN 1). The undersigned will address this alternative argument in Section E.

On direct appeal Wood argued since the aggravator is unconstitutionally vague and arbitrary it amounts to a violation of his Fifth, Sixth, Eighth and Fourteenth Amendments under the United States Constitution (DN 11, Appendix at 170). Thus, there is no merit to respondent's contention that federal review is not available because of a failure to fairly present his federal rights claim to the State courts.

The statute at issue permits an aggravated sentence if:

"The offense of murder or kidnaping was committed by a person with a prior record of conviction for a capital offense, or the offense of murder was convicted by a person who has **a substantial history of serious assaultive criminal convictions**..."

KRS 532.025(2)(a)(1)(emphasis added). The Supreme Court of Kentucky considered the applicable law and found "this statute sufficiently directs and limits the jury's discretion in finding the presence of this aggravating circumstance so as to avoid arbitrary or capricious application." <u>Wood</u>, 178 S.W.3d at 509 (citing <u>Arave v. Creech</u>, 507 U.S. 463 (1993). The Supreme Court of Kentucky then explained:

14

"By using the plural of 'conviction' the legislature has limited this aggravating factor to those defendants who have at least two prior assaultive convictions.  The quantity of convictions to be considered is further limited by the term 'substantial.'  Merriam-Webster defines 'substantial' as 'ample to satisfy.'   We believe that the word 'substantial' is a term of common understanding, and that the average person or juror comprehends its meaning.  Thus, the wording of the statute limits the quantity of prior convictions to be considered.

Furthermore, the character of the prior offenses to consider is sufficiently limited.  The statute only contemplates 'serious assaultive criminal convictions.'  Primarily, it limits the jury's deliberations to only such assaultive behavior as resulted in a criminal conviction. ... Furthermore, contrary to Wood's assertions, we do not opine that the term 'serious assaultive' is overly subjective.  Of course, this language invites a certain amount of discretion and necessarily rests on the jury's contemplation as to what constitutes a serious assaultive conviction.  However, the fact that a term or phrase invites varying interpretations does not automatically render a statute impermissibly vague.  Sentencing schemes are not fixed equations in which the circumstances of a defendant's crimes and facts regarding his or her background are simply plugged in and a sentence is returned.  There is a subjective element to every jury decision, starting with a determination of guilt.  In fact, it is this very element of subjectivity that prevents the imposition of the death penalty or an aggravated sentence on every defendant that simply has a prior conviction for assault.  The phrase 'serious assaultive' is a description that lies within the common sense understanding of the public.  We do not believe it is so broad or vague that the common juror could not understand its meaning.

Finally, we note that this aggravating factor satisfies the requirement that the circumstances may not apply to every defendant eligible for the death penalty.  Obviously, not every defendant found guilty of capital murder will have at least two prior assaultive criminal convictions.  Furthermore, even of those defendants with prior convictions for assault, the jury may not consider this history 'substantial' or may not consider the prior criminal convictions to be of a 'serious assaultive' quality.

We thus conclude that the language of KRS 532.025(2)(a)(1) is not so broad or vague as to leave the jury unfettered in what it might consider a 'substantial history of serious assaultive convictions.'  Nor is the language so undefined that the jury is left to speculate as to what circumstances would satisfy the aggravating circumstance. The statute limits not only the number of prior convictions that the jury

15

> may consider, but also the quality and nature of those convictions. Moreover, the language of the statute is not so inclusive that the circumstance would apply to any death-eligible defendant. We thus affirm the trial court's determination that the statute is constitutional."

Id. at 509-510.

Clearly, the Supreme Court of Kentucky applied United States Supreme Court precedent in reaching its well-reasoned determination that KRS 532.025(2)(a)(1) is Constitutional. Wood, 178 S.W.3d at 507-510. Adjudication of this claim by the Supreme Court of Kentucky has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of," United States Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 412-413 (2000) (quoting § 2254(d)(1)). Thus, Wood is not entitled to a writ on this claim.

For the reasons set forth above, the undersigned is confident that jurists of reason would not find it debatable whether Ground Four states a valid claim of the denial of a Constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000). Thus, the undersigned does not recommend issuance of a Certificate of Appealability as to the claim asserted in Ground Four.

E

In Ground Five Wood argues the trial court should have directed a verdict on the aggravating circumstance in KRS 532.025(2)(a)(1) (DN 1). He believes the Commonwealth's evidence was insufficient to prove the aggravator beyond a reasonable doubt (DN 1). Additionally, Wood argues the trial court should have determined which of his prior convictions should be presented to the jury for consideration (DN 1).

On direct appeal Wood asserted his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution had been violated (DN 11, Appendix at

16

171-172).  Thus, there is no merit to respondent's contention that federal review is not available due to a failure to fairly present his federal rights claim to the State courts.

The Supreme Court of Kentucky rejected Wood's claim that the trial court should have determined which prior convictions constituted serious assaultive convictions and presented only those convictions to the jury for consideration.  Wood, 178 S.W.3d at 510.  In relevant part the opinion of the Supreme Court of Kentucky reads as follows:

> "In light of our discussion of the constitutionality of this statute, it should be clear that the question of what constitutes a 'substantial history of serious assaultive criminal convictions' is a question for the jury.  Wood's suggestion that the trial courts should be charged with the duty of parsing out a defendant's prior assaultive convictions from other convictions is properly directed at the General Assembly, not this court, as we are not at liberty to insert provisions to or rewrite an otherwise clear and intelligible statute. ...The trial court did not err in submitting evidence of Wood's prior convictions to the jury.
>
> Furthermore, the evidence presented by the Commonwealth was sufficient to meet the standard of proof.  Wood had previously been convicted of the following crimes that could reasonably have been construed as serious assaultive convictions: Seventeen counts of first-degree wanton endangerment, one count of third-degree assault, one count of assault in the first degree under an extreme emotional disturbance, one count of assault in the fourth degree with a knife, another count of assault in the fourth degree, and one count of menacing.  This litany of prior assaultive conduct was sufficient to induce a reasonable juror to believe beyond a reasonable doubt that Wood had a 'substantial history of serious assaultive criminal convictions' and therefore, a directed verdict on this aggravating circumstance was not warranted. ... Wood's arguments that these prior convictions cannot be considered 'serious' go to the weight of the evidence, which is a question solely within the province of the jury."

Id. at 510-511.

It is well settled that an evidentiary ruling by a State court is not cognizable in federal habeas corpus proceedings unless the ruling results in the denial of due process of law.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Essentially, Wood is challenging an evidentiary ruling by a

State court.  Furthermore, he has not demonstrated how this ruling resulted in a denial of due process of law.  Additionally, the undersigned concludes adjudication of this claim by the Supreme Court of Kentucky has not resulted in a decision that is either "contrary to" or involved an "unreasonable application of," United States Supreme Court precedent.  Williams, 529 U.S. at 412-413 (quoting § 2254(d)(1)).  Thus, Wood is not entitled to a writ on the claim he asserts in Ground Five.

For the reasons set forth above, the undersigned is confident that jurists of reason would not find it debatable whether Ground Five states a valid claim of the denial of a Constitutional right.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Thus, the undersigned does not recommend issuance of a Certificate of Appealability as to the claim asserted in Ground Five.

F

In Ground Six Wood challenges the trial court's adverse ruling on his motion to change venue (DN 1; DN 11, Appendix at 172-178).  Wood contends that local news channels exploited many details about his case, calling it one of the top 10 news stories of 2001.  Id.  He asserts that the stories were factually incorrect and, as a result, prejudiced his ability to receive an impartially impaneled jury.  (DN 1).  According to Wood, only one of the 72 potential jurors had not heard about the case and approximately 23 people believed Wood was guilty due to the pretrial publicity (DN 1).

In his direct appeal argument Wood argued the trial court's abuse of discretion violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution (DN 11, Appendix at 178).  For this reason, the undersigned concludes there is no merit to respondent's contention that federal review is barred due to a failure to fairly present his federal rights claim to the State courts.

18

The Supreme Court of Kentucky noted that Wood's main contention was that the community of Glasgow "was so saturated with pre-trial publicity of his crimes that it was virtually impossible to impanel a fair and impartial jury." Wood, 178 S.W.3d at 513. In assessing whether the trial court abused its discretion, in refusing to change the venue of Wood's trial, the State appellate court noted Wood's assertion that approximately 95 percent of the members of the jury pool had been exposed to pretrial publicity. Id. The Supreme Court of Kentucky observed that Wood's crimes occurred midday on a busy Glasgow street with over a dozen eyewitnesses. Id. The State appellate court then acknowledged, "[i]t would naturally follow that media coverage of the events would be extensive." Id. The analysis and holding by the Supreme Court of Kentucky reads as follows:

> "However, the central concern in impaneling a jury is not simply the amount of pretrial publicity, but whether a fair trial is possible. ...
>
> Here, we are more than satisfied that the trial court impaneled a fair and impartial jury, and therefore a change of venue was unnecessary. General voir dire was conducted on 226 persons. Fifty of those people were qualified and questioned further. Voir dire on the issue of pretrial publicity was extensive and thorough. Persons who stated that they had formed an opinion of Wood's guilt or innocence were excused. Additionally, persons who had been exposed to incorrect or overly prejudicial information were excused, as were persons who indicated a high level of exposure to media reports about the case. Of the 20 persons selected for the jury, it is clear that each was impartial and otherwise qualified to serve.
>
> Though media coverage of the case was a concern, we agree with the trial court's ultimate determination that pretrial publicity would not permeate the entire trial and would not prevent a fair trial. ... We find no indication that the trial court in this matter abused its discretion."

Id. at 514.

Clearly, the Supreme Court of Kentucky did not address the Constitutional component to Wood's claim because it disposed of the claim on a State law basis. For this reason,

Wood's Constitutional claim is examined *de novo* instead of performing a § 2254(d) review. Rompilla v. Beard, 545 U.S. 374, 390 (2005) (citing Wiggins v. Smith, 539 U.S. 510, 534 (2003)).

The Supreme Court of the United States has indicated it is not required that jurors be totally ignorant of the facts and issues involved in a criminal case. Irvin v. Dowd, 366 U.S. 717, 722 (1961). Due to swift, widespread and diverse methods of communication, an important criminal case can be "expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case." Id. "To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard." Id. at 723. "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Id. (citations omitted). However, the above rule does not foreclose an inquiry into whether its application in a given case results in a deprivation of the prisoner's liberty without due process of law. Id. (citation omitted). When such an inquiry is made, the challenger has the burden of demonstrating that the nature and strength of the opinion formed by the juror is sufficient to raise the presumption of partiality. Id. The finding of the trial judge on the issue of impartiality should not be set aside unless the reviewing court determines that the prejudice is "manifest." Id. at 723-724. Clearly, Wood has not sustained his burden under the above standard. Thus, he is not entitled to a writ on this claim.

For the reasons set forth above, the undersigned is confident that jurists of reason would not find it debatable whether Ground Six states a valid claim of the denial of a Constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000). Thus, the undersigned does not recommend issuance of a Certificate of Appealability as to the claim asserted in Ground Six.

20

G

In Ground Seven Wood argues the charges of kidnaping, burglary, and assault involving Summers should have been tried separately from the counts involving Jones (DN 1). Wood asserts that evidence related to his shooting Jones "would not have been admissible in the prosecution for the hostage taking of Ms. Summers as they were clearly unrelated" (DN 1, Attachment Page 1). Wood argues that he could have been tried for the crimes involving Summers without any reference to the crimes involving Jones (DN 1, Attachment Page 1).

On direct appeal Wood argued the trial court's refusal to sever violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution (DN 11, Appendix at 180). For this reason, the undersigned concludes there is no merit to respondent's contention that review of the claim is barred due to a failure to fairly present his federal rights claim to the State courts.

The Supreme Court of Kentucky noted that the charges of kidnaping, burglary, and assault involving Summers occurred when Wood arrived at her home, after having fled Broadway Street with Jones in his vehicle. Wood, 178 S.W.3d at 514. It noted that Ky.R.Crim.P. 9.16 permits "a trial court to order separate trials of counts if it appears that the defendant or the commonwealth will be prejudiced by the joinder." Id. The State appellate court observed if the offenses are closely related in character, circumstances, and time then joinder is appropriate. Id. (citing Ky.R.Crim.P. 618; Cardine v. Commonwealth, 623 S.W.2d 895 (Ky. 1981)). It further noted that a trial court's ruling with respect to joinder "'will not be overturned absent a showing of prejudice and clear abuse of discretion.'" Wood, 178 S.W.3d at 514 (quoting Rearick v. Commonwealth, 858 S.W.2d 185, 187 (Ky. 1993)).

The relevant portion of the State appellate court's opinion reads as follows:

"Here, the crimes committed at Ms. Summers' home could not have possibly been more related in character, circumstances, and time to the crimes that occurred against Ms. Jones and Mr. Tisdale. Wood only arrived at Ms. Summers' because he was attempting to evade the police, who were chasing him for the crimes against Ms. Jones and Mr. Tisdale. Undoubtedly, the crimes against all three victims arose from a single chain of events that happened to involve two physical locations. Furthermore, Wood has failed to demonstrate how he was prejudiced by the trial court's decision. The trial court acted well within its discretion when it denied Wood's motion for separate trials."

Id.

Clearly, the Supreme Court of Kentucky did not address the Constitutional component to Wood's claim because it disposed of his claim on a State law basis. Id. For this reason, Wood's Constitutional claim is examined *de novo* instead of performing a § 2254(d) review. Rompilla v. Beard, 545 U.S. 374, 390 (2005) (citing Wiggins v. Smith, 539 U.S. 510, 534 (2003)).

In denying Wood's motion for severance, the Supreme Court of Kentucky applied State law, and as a result, this Court must accept as binding its interpretation of the State rules for joinder and severance of criminal charges. In considering whether the denial of severance amounted to an error warranting relief in a habeas proceeding, the question is whether the failure to sever denied Wood due process of law under the Fourteenth Amendment. Corbett v. Bordenkircher, 615 F.2d 722, 724 (6th Cir. 1980). Thus, in order to obtain federal habeas relief on this claim involving State law, Wood must show that misjoinder of the counts has resulted in prejudice so great as to deny him his right to a fair trial. United States v. Lane, 474 U.S. 438, 446 n. 8 (1986). Notably, Wood must demonstrate actual prejudice, not merely the potential for prejudice. Herring v. Meachum, 11 F.3d 374, 377-378 (2d Cir. 1993).

The undersigned concludes that Wood has failed to demonstrate that the trial court's ruling has resulted in a misjoinder of counts given the circumstances, character and time of the

crimes that occurred against Jones and Summers.  Furthermore, Wood has failed to demonstrate the trial court's adverse ruling resulted in actual prejudice so great as to deny him the right to a fair trial.

 For the reasons set forth above, the undersigned is confident that jurists of reason would not find it debatable whether Ground Seven states a valid claim of the denial of a Constitutional right.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Thus, the undersigned does not recommend issuance of a Certificate of Appealability as to the claim asserted in Ground Seven (DN 1).

H

 In Ground Eight Wood claims the kidnaping exemption precludes his conviction for kidnaping Jones (DN 1).  Wood argues since his removal of Jones from her car was incidental to the commission of the murder the kidnaping exemption applies and his conviction for kidnaping Jones is precluded (DN 1).

 Wood contended on direct appeal that his conviction on the kidnaping charge violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution (DN 11, Appendix at 184).  Thus, the undersigned finds no merit to respondent's argument that federal review is barred due to Wood's failure to fairly present a Constitutional claim to the State courts.

 On direct appeal Wood argued the kidnaping exemption found at KRS 509.050 precluded his conviction for the capital kidnaping of Jones because his restraint of Jones did not go beyond that which occurred incidental to her murder.  Wood, 178 S.W.3d at 514-515.  In relevant part the opinion of the Supreme Court of Kentucky reads as follows:

> "This Court employs a three-prong test to determine when the
> kidnapping exemption statute applies. ... First, the underlying

23

criminal purpose must be the commission of a crime defined outside of KRS 509.  Second, the interference with the victim's liberty must have occurred immediately with or incidental to the commission of the underlying intended crime.  Third, the interference with the victim's liberty must not exceed that which is ordinarily incident to the commission of the underlying crime. ... All three prongs must be satisfied in order for the exemption to apply.  Application of the kidnapping exemption statute is determined on a case-by-case basis.  Gilbert v. Commonwealth, 637 S.W.2d 632, 635 (Ky. 1982).  'The purpose of the statute is to prevent misuse of the kidnapping statute to secure greater punitive sanctions for rape, robbery and other offenses which have as an essential or incidental element a restriction of another's liberty.'  Id.

We find that Wood has failed to prove the third prong of the test.  When Wood pulled Ms. Jones from her vehicle and forced her into his own, she had already been shot and was seriously wounded.  The injury ultimately resulting in her death had been inflicted.  It was unnecessary to the commission of murder to pull Ms. Jones into another vehicle and drive some distance away.  The interference with her liberty greatly exceeded what was necessary to murder her, and at a great cost.  Had she simply been shot and left in her vehicle as Wood drove away, she might have received medical attention.  Instead, she expired in the back seat of Wood's car.  Having failed to satisfy this prong of the test, we need not address the remaining two prongs. ... The kidnapping exemption statute does not apply in this matter."

Wood, 178 S.W.3d at 515.

The Supreme Court of Kentucky did not address the Constitutional component to Wood's claim because it disposed of his claim on a State law basis.  Id.  For this reason, Wood's Constitutional claim is examined *de novo* instead of performing a § 2254(d) review.  Rompilla v. Beard, 545 U.S. 374, 390 (2005) (citing Wiggins v. Smith, 539 U.S. 510, 534 (2003)).

Since construction of KRS 509.050 is purely a question of State law, the Kentucky Supreme Court's decision is binding on this court.  Furthermore, federal habeas corpus relief does not lie for alleged errors of State law.  Estelle v. McGuire, 502 U.S. 62, 67 (1991).  Since it is not the province of a federal habeas court to reexamine a State-court determination on a State-law

24

question, the Court must determine whether the kidnaping conviction violated Wood's federal Constitutional rights.

Clearly, Wood has failed to demonstrate his conviction for kidnaping Jones violated his rights under the Sixth and Fourteenth Amendments to the Constitution. Further, the undersigned concludes Wood's conviction for kidnaping Jones does not violate his Sixth and Fourteenth Amendment rights under the Constitution.[4] In sum, Wood is not entitled to a writ on the claim asserted in Ground Eight.

For the reasons set forth above, the undersigned is confident that jurists of reason would not find it debatable whether Ground Eight states a valid claim of the denial of a Constitutional right. Slack v. McDaniel, 529 U.S. 473, 484 (2000). Thus, the undersigned does not recommend issuance of a Certificate of Appealability as to the claim asserted in Ground Eight (DN 1).

I

In Ground Nine Wood argues the trial court erred in denying his motions to excuse for cause five potential jurors (DN 1). Wood contends that the trial court's error forced him to use five peremptory challenges on prospective jurors who should have been excluded for cause (DN 1).

___

[4]The undersigned notes that the Fifth Amendment guarantee against double jeopardy includes protection against multiple punishments for the same offense. Schiro v. Farley, 510 U.S. 222, 229 (1994). However, on direct appeal Wood did not allege that his Fifth Amendment guarantee against double jeopardy had been violated (DN 11, Appendix at 184). Since Wood did not fairly present such a federal Constitutional claim on direct appeal in the State courts and he is now procedurally barred from doing so, Bronston v. Commonwealth, 481 S.W.2d 666, 667 (Ky. 1972), federal review of the claim is barred absent a showing of cause and prejudice. Reed v. Farley, 512 U.S. 339, 353-355 (1994). Wood has not made a showing of cause and prejudice. Therefore, if Wood is attempting to allege a violation of his Fifth Amendment guarantee against double jeopardy, federal review of the claim is barred.

25

In light of the arguments and cases set forth in Wood's direct appeal brief (DN 11, Appendix at 184-194), the undersigned concludes Wood fairly presented his Constitutional claim to the State courts.

On direct appeal, Wood argued five jurors should have been removed for cause because, for varying reasons, each was unqualified to serve.  Wood, 178 S.W.3d at 515.  The Supreme Court of Kentucky noted that during trial Wood challenged all five jurors for cause and the trial court denied his motions.  Id.  It also noted that as a result of the trial court's rulings, Wood used five peremptory challenges on these jurors.  Id.   In relevant part the opinion of the Supreme Court of Kentucky reads as follows:

> "We conclude that Wood has failed to provide a satisfactory reason why any of these five prospective jurors should have been removed for cause.  When ruling on a challenge for cause, it is the probability of bias or prejudice that is determinative.  Montgomery v. Commonwealth, 819 S.W.2d 713, 718 (Ky. 1991).  Reviewing the totality of each prospective juror's responses, we believe that none revealed a probability of bias or prejudice.  The trial court did not abuse its discretion in denying these challenges for cause, and reversal is not warranted."

Wood, 178 S.W.3d at 517.

The Supreme Court of Kentucky did not address the Constitutional component to Wood's claim because it disposed of the claim on a State law basis.  Id. at 515-517.  For this reason Wood's Constitutional claim is examined *de novo* instead of performing a § 2254(d) review.  Rompilla v. Beard, 545 U.S. 374, 390 (2005) (citing Wiggins v. Smith, 539 U.S. 510, 534 (2003)).

The undersigned notes there is no Constitutional right to peremptory challenges.  Ross v. Oklahoma, 487 U.S. 81 (1988).  Additionally, given the overwhelming evidence of guilt as to each charged offense, Wood cannot possibly make a showing that had there been five more peremptory challenges available it would have had any effect on the trial at all.  It is not enough to make a bare assertion that, had there been five additional peremptory challenges available, different

26

jurors would have been excluded and the result might have been a more favorable jury for Wood. McQueen v. Scroggy, 99 F.3d 1302, 1320-1321 (6th Cir. 1996) cert. denied, 520 U.S. 1257 (1997) (overruled on another ground).  In sum, Wood has failed to demonstrate that judicial action has resulted in a Constitutional violation.  Id. at 1321.  The Constitution requires that Wood be judged by a fair and impartial jury, and a review of the circumstances surrounding the purported bias of these five jurors leads the undersigned to conclude that Wood was in fact judged by such a jury.  Id. In sum, Wood is not entitled to a writ on the claim asserted in Ground Nine.

For the reasons set forth above, the undersigned is confident that jurists of reason would not find it debatable whether Ground Nine states a valid claim of the denial of a Constitutional right.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Thus, the undersigned does not recommend issuance of a Certificate of Appealability as to the claim asserted in Ground Nine (DN 1).

<u>RECOMMENDATION</u>

For the foregoing reasons, it is recommended that Wood's petition for writ of habeas corpus be DENIED.  Additionally, the undersigned recommends that a Certificate of Appealability be DENIED as to each claim asserted in Wood's petition.

27

<u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court.  If a party has objections, such objections must be filed within ten (10) days or further appeal is waived.  <u>Thomas v. Arn</u>, 728 F.2d 813 (6th Cir.), <u>aff'd</u>, U.S. 140 (1984).

Copies:       Counsel
              Petitioner, *pro se*